OUSLER *v.* ROBINSON.

Opinion delivered April 2, 1904.

72    339
76    149:

1.  ADMINISTRATION—DOWER—SALE OF REVERSION.—An order of the probate court directing an administratrix to sell the lands of the estate other than that set apart for dower did not authorize the sale by her of the reversion in the dower land.   (Page 341.)

2.  LIMITATION—ACCRUAL OF RIGHT.—Where an administratrix wrongfully sold the reversion in land set apart for dower, a right of action on behalf of intestate's heirs to recover such land did not accrue until the termination of the widow's life estate.   (Page 343.)

Appeal from Chicot Chancery Court.

MARCUS L. HAWKINS, Chancellor.

Suit by D. N. Ousler and others against James F. Robinson and others.   From a judgment in favor of defendants plaintiffs have appealed.   Reversed in part.

STATEMENT BY THE COURT.

David K. Ousler died intestate in Chicot county in the year 1869, leaving a widow and several children.   At the time of his death he owned a tract of 480 acres of land upon which he resided. His widow, Mary E. Ousler, was appointed administratrix of the estate.   During the progress of the administration the administratrix filed a petition in the probate court, stating that it was necessary to sell the lands of the estate to pay the debts thereof, and that, outside of her dower interest, there were 320 acres of land subject to the payment of debts of the estate, and she asked that the court make an order allowing her to sell the land at private sale.

The court in January, 1872, after hearing the petition, made the order as requested.   The order recites that the administratrix had represented that, after setting aside her dower, there would remain 320 acres subject to the payment of debts, and then proceeds as follows:   "It is therefore ordered that, after setting apart

the dower of petitioner in the lands belonging to said estate, said administratrix be allowed to have the lands of said estate appraised according to law, and that she sell the same at private sale to the best advantage, provided the same are not sold at less than two-thirds of the appraised value, and that, when sold, she report her action herein to this court."

In January, 1873, before the land was sold by the administratrix, the dwelling house and 160 acres of land attached were set apart to the widow as dower, being the same land in controversy in this action. Afterwards the administratrix, in 1876, for the consideration of $400, sold 320 acres of land of the estate, and also the reversion of the 160 acres assigned as dower to Mary P. Robinson. The sale was not confirmed until November, 1895, but at that time the administratrix was dead, and the heirs of Ousler had already begun this action in ejectment to recover the land. After that action was commenced, the probate court appointed an administrator *de bonis non,* who reported the sale to the probate court, and the court confirmed it. The heirs took an appeal to the circuit court, both from the order appointing the administrator *de bonis non,* and from that confirming the sale. The circuit court set aside the order appointing an administrator *de bonis non,* and transferred the application to confirm to the chancery court, to which court the action in ejectment had already been transferred, and by consent consolidated it with that action.

The defendant, James F. Robinson, the husband of Mary E. Robinson, deceased, and the other defendants, her children, set up, among other defenses, the purchase at the sale of the land by the administratrix; also as to half of the land by a purchase at a sale of lands under decree for overdue taxes, and deed from the commissioner appointed to make the sale.

On the hearing the chancellor found in favor of defendants, and gave judgment accordingly. Plaintiffs appealed.

*Baldy Vinson,* for appellants.

The sale of the homestead could not be made; hence the sale could not be legally confirmed. 38 Ark. 78; 74 Ark. 413; 48 Ark. 248; 37 Ark. 316; 47 Ark. 445. The land could not be sold subject to the rights of widow and minor heirs. 50 Ark. 329; 52

Ark. 213; 56 Ark. 563, 574. The court could not order the deed before the first term after sale, and unless ordered it is a nullity. 47 Ark. 215. Robinson had an estate of curtesy in the lands for the life of Mary E. Ousler. 47 Ark. 175; 53 Fed. 872. He acquired no better title for himself or heirs than they had before the tax sale. 30 Ark. 95. The chancery court had no power to take an acknowledgment. Sand. & H. Dig. § 708; 15 Ark. 655. The heirs of Ousler had a homestead that rendered a probate sale void, and they could not abandon it. 58 Ark. 303; 47 Ark. 504, 445; 25 S. W. 833.

*Robinson & Beadle,* and *P. C. Dooley,* for appellees.

The court had jurisdiction to order the sale. 67 Ark. 239. The order of sale cannot be collaterally attacked. Freeman, Judg. § 319a; 15 N. Y. 191; 26 Ill. 179; 2 Pet. 157; 2 Wall. 345; 110 U. S. 189; 83 Am. Dec. 51; Rorer, Judicial Sales, 172; 24 Mo. 265. There is no proof that the land sold was the homestead. 66 Ark. 1; 67 Ark. 232. There is no proof that the land in controversy was the homestead of D. K. Ousler. 31 Ark. 145; 33 Ark. 399; 41 Ark. 94. The plaintiff was guilty of laches. Story, Eq. § 1520; 80 Fed. 465; 44 Neb. 772; 15 Ark. 295; 29 Ark. 623; 142. U. S. 236. The homestead can be abandoned. 93 Ala. 106; 146 Ill. 646; 106 Ill. 6; 26 Fed. 413; 141 Mass. 187; 38 Tex. 410; 75 Mo. 559; 60 Ark. 262; 60 Ark. 55; 56 Ark. 601; 55 Ark. 85. The act of the court was a confirmation of the sale. 33 Ark. 298; 103 Mo. 661; 63 Tex. 210; 53 Ark. 43; 13 S. W. 597.

RIDDICK, J. (after stating the facts). This is an action of ejectment by David N. Ousler and other heirs of David K. Ousler, deceased, to recover 160 acres of land which was owned and occupied by him at his death. The defendants claim the land under a sale and conveyance made by the administratrix of the estate of Ousler, and also, as to half of the land, under a sale made by virtue of an overdue tax decree.

The evidence tends to show that the land was the homestead of Ousler, and after his death became the homestead of his widow and children. On this account it is contended that the sale by the administratrix was void, but we need not notice that point,

for an inspection of the order made by probate court for the sale of the land shows clearly that it did not direct or authorize the administratrix to sell the land that was set aside for dower, or the reversionary interest of the heirs therein. The order recites that after assignment of dower there would remain 320 acres of land subject to sale for the payment of debts, and then directs that, after the dower is set apart, the lands be appraised and sold. Taking the whole of the order into consideration, it is clear that the administratrix was only authorized to sell the 320 acres of land remaining after the assignment of dower. The administratrix, it seems, attempted to sell the reversionary interest of the heirs in the dower land, but she had no authority to do so. The sale was never confirmed until after the commencement of this action, and the heirs appealed from the order confirming it. We think the order of the chancellor confirming that portion of the sale should not be sustained, and that the title of the heirs to the 160 acres in controversy, which had been set apart to their mother as dower, was not affected by this attempted sale of the reversion, and that the defense based thereon must fail. As to the 80 acres which defendants claim under the overdue tax decree, it is said that the decree was never confirmed. Now, it is not absolutely necessary that the confirmation should appear by a formal order to that effect. "It is sufficient if the confirmation can be gathered from the whole record." 17 Am. & Eng. Enc. Law (2d Ed.), 991, 992.

But there appears to have been a regular and formal confirmation of the sale of the lands under the overdue tax decree, which order of confirmation was made in 1888. In addition to this order, to which we see no valid objection, the record shows that in 1886 the commissioner who made the sale appeared in court and acknowledged the deed set up by the defendants, and the court ordered that a copy of the order of acknowledgment be indorsed on the deed, and certified by the clerk of the court, "to the end that the same may be entitled to record," and further directed that a writ of possession issue on demand of the purchasers. This also tends to show that the court approved the sale; otherwise it would not have ordered a writ of possession. But we need not discuss that question further, for, as we have stated, the record here shows a formal order confirming the sale.

Again, it is said that the defendant Robinson was in possession of the land at the time the taxes for which the land was sold accrued, and should have paid them, and that he could not strengthen his title by purchase at a sale for taxes brought about by his own default. But the record does not sustain this contention, or show that Robinson was in possession of the land at the time the taxes accrued. Taking the record as we have it here, there is nothing to show that the sale under the overdue tax decree was invalid.

As to the statute of limitations, we think that the right of action did not accrue until the death of the mother of plaintiff and the termination of her life estate in the land which had been purchased by Mary E. Robinson and held by defendants after her death. As this action was commenced within less than two years after the termination of this life estate, it follows that it was not barred by limitation.

On the whole case, the judgment of the chancellor as to the 80 acres held by defendants under the overdue tax decree will be affirmed; but the judgment as to the remaining 80 acres will be reversed, and the cause remanded, with an order that a decree therefor be rendered in favor of plaintiffs, with such judgment for rents and profits as the evidence may demand.